UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BOBBIE L. MAEL,

                              Plaintiff,                              REPORT
                                                                      and
                    v.                                                RECOMMENDATION

TIMOTHY B. HOWARD, and                              18-CV-378JLS(LGF)
DEPUTY LEE RICHARD,

                              Defendants.
_____

APPEARANCES:          JON LOUIS WILSON, ESQ.
                      Attorneys for Plaintiff
                      111 Ontario Street
                      Lockport, New York  14094

                      HOGAN WILLIG, PLLC
                      Attorneys for Plaintiff
                      STEVEN M. COHEN, of Counsel
                      2410 North Forest Road
                      Suite 301
                      Getzville, New York  14068

                      MICHAEL A. SIRAGUSA
                      ERIE COUNTY ATTORNEY
                      Attorney for Defendants
                      JEREMY C. TOTH,
                      ERIN ELIZABETH MOLISANI, and
                      KENNETH R. KIRBY
                      Assistant Erie County Attorneys, of Counsel
                      Erie County Department of Law
                      95 Franklin Street
                      16th Floor
                      Buffalo, New York  14202

## **JURISDICTION**

This case was referred to the undersigned by Honorable John L. Sinatra, Jr., on

January 29, 2020, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on Defendants' motion for summary judgment (Dkt. 30), filed August 1, 2019.

## BACKGROUND

On December 10, 2013, Plaintiff Bobbie L. Mael ("Plaintiff"), commenced this action in New York Supreme Court, Erie County, asserting four state claims for relief seeking to recover from Defendants Erie County Sheriff Timothy B. Howard ("Howard") and Erie County Deputy Sheriff Lee Richard ("Richard") (together, "Defendants"), damages for personal injuries allegedly sustained by Plaintiff in connection with an arrest by Defendant Richard on December 25, 2012.  The four claims in the original Complaint were asserted pursuant to New York law and included false arrest, intentional assault, negligence, and failure to train/supervise.  On January 6, 2014, Defendants filed an answer.  On June 22, 2017, Plaintiff moved in New York Supreme Court for leave to file an amended complaint to include an additional claim for relief alleging a violation of Plaintiff's civil rights based on Defendant Richard's alleged excessive use of force in arresting Plaintiff.  On August 29, 2017, Defendants moved pursuant to New York law to dismiss the first and second claims for relief (Dkt. 1-7).  On February 28, 2018, New York Supreme Court Justice E. Jeannette Ogden granted Defendants' motion to dismiss in part, dismissing the first claim for relief alleging false arrest, and also granted Plaintiff's motion to file an amended complaint.  (Dkt. 1-11). Accordingly, on March 6, 2018, Plaintiff filed the Amended Complaint (Dkt. 1-12).  The Amended Complaint asserts five claims for relief, the first four under New York law including false arrest ("First Claim"); intentional assault ("Second Claim"), negligence

2

("Third Claim"), and failure to train/supervise ("Fourth Claim"), as well as a Fourteenth Amendment excessive force claim asserted pursuant to 42 U.S.C. § 1983 ("Fifth Claim"). Defendants' answer to the Amended Complaint was filed on March 21, 2018 (Dkt. 1-13). Based on the newly asserted Fifth Claim, on March 26, 2018, Defendants removed the action to this court asserting federal question as the basis for original jurisdiction pursuant to 28 U.S.C. § 1331 (Dkt. 1).

The parties engaged in discovery which is complete. On August 1, 2019, Defendants filed the instant motion for summary judgment ("Defendants' Motion") (Dkt. 30), attaching in support the Declaration of Assistant Erie County Attorney Erin Elizabeth Molisani (Dkt. 30-1) ("Molisani Declaration"), Movants' Statement of Material Facts ("Dkt. 30-2) ("Defendants' Statement of Facts"), exhibits A through K (Dkts. 30-3 through 30-K) ("Defendants' Exh(s). __"), and the Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Dkt. 30-14) ("Defendants' Memorandum"). On October 1, 2019, Plaintiff filed Plaintiff's Rule 56 Opposing Statement of Facts to Defendants' Rule 56 Statement of Facts (Dkt. 39) ("Plaintiff's Statement of Facts"), the Attorney Affirmation of Jon Louis Wilson, Esq. for Exhibits (Dkt. 40) ("Wilson Affirmation"), the Affidavit of Bobbie Mael (Dkt. 41) ("Plaintiff's Affidavit"), Plaintiff's Expert [Darrin Porcher] Affidavit (Dkt. 42) ("Porcher Affidavit"), and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Dkt. 43) ("Plaintiff's Memorandum"). On October 9, 2019, Defendants filed the Reply Declaration of Assistant Erie County Attorney Molisani (Dkt. 44) ("Molisani Reply Declaration"), attaching the Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment (Dkt. 44-1) ("Defendants' Reply"). Filed on

3

October 10, 2019, was Plaintiff's sur-reply (Dkt. 46) ("Plaintiff's Sur-Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion (Dkt. 30) should be GRANTED in part and DENIED in part.

## **FACTS**[1]

This action stems from the arrest of Plaintiff Bobbie L. Mael ("Plaintiff" or "Mael"), by Defendant Erie County Deputy Sheriff Lee Richard ("Defendant" or "Richard"), in the early morning hours of December 25, 2012 on Transit Road in Amherst, New York. Plaintiff had attended a Christmas party at the home of some friends and was driving north on Transit Road when she felt ill and pulled into the parking lot of a medical office building located on the east side of Transit Road, specifically, at 6105 Transit Road, Amherst,[2] New York.  Plaintiff vomited into the cup holders in the console of her vehicle, then observed Defendant Richard shining a light on her through the vehicle's windows and asking Plaintiff to roll down the window.  Plaintiff activated the control to retract the window following which Defendant requested Plaintiff's driver's license. Plaintiff provided her driver's license to Defendant, advising Defendant she was ill. Defendant then requested Plaintiff exit her vehicle, but Plaintiff, unsure whether Defendant was a legitimate law enforcement officer, replied she was sick and did not know who Defendant was.  Plaintiff describes Defendant as wearing a coat with no badge and that she never saw Defendant's badge so instead of exiting the vehicle, Plaintiff requested Defendant display his badge, advised she was very sick and did not

---

[1] Taken from the pleadings and motion papers filed in this action.
[2] The court notes they properties on that portion of the east side of Transit Road are located in the Town of Clarence, but are assigned Amherst mailing addresses.

want to exit the vehicle, and put the window up.  According to Plaintiff, Defendant became angry at the request, opened the vehicle's driver's door and started to pull Plaintiff from the vehicle.  Plaintiff tried to close the door, but Defendant put his leg between the vehicle's seat and driver's door, using both hands forcibly grabbed Plaintiff by the collar of her coat and her shoulder, pulling Plaintiff, who was clinging to the steering wheel, from the vehicle and slammed Plaintiff onto the pavement in the dimly lit parking lot causing Plaintiff to injure her neck.  Plaintiff maintains that as she lay on the ground in the parking lot, Defendant forced her arms behind her back, applied handcuffs, and then dragged Plaintiff, who was facing down, by her coat approximately 70 to 80 feet across the parking lot to an ambulance[3] located at the next medical building.

Upon reaching the ambulance, the attendant, one "Rachel," informed Plaintiff that if Plaintiff had obeyed Defendant's direction to exit the vehicle, Plaintiff would not have gotten hurt.  Rachel did not attend to Plaintiff's injuries, but strapped her hands down prior to Plaintiff being placed into the ambulance for medical transport.  Plaintiff maintains she was unaware of where the ambulance was taking her until Plaintiff, still strapped to the gurney, was wheeled into the emergency room ("ER") at Erie County Medical Center ("ECMC").  Plaintiff was then transferred by an unidentified ECMC employee from the gurney to an ER examining table and was no longer strapped down. The attending ER physician cleaned up Plaintiff's face, administered one injection for Plaintiff's nausea, another injection for tetanus, and a third injection for pain before suturing closed the laceration over Plaintiff's left eyebrow which required three stitches.

---

[3] The ambulance was not called to the scene but, rather, was already in the parking lot where it was regularly parked with the attendants inside, using the parking lot as a "staging area" to improve response time to anticipated calls from dispatch.  Dkt. 30-6 at 158-59.

While Plaintiff was still in the ER, she was served by Defendant Richard with an appearance ticket charging Plaintiff with, *inter alia*, driving under the influence ("DUI"). Plaintiff was then discharged and was driven home by some friends.  Upon arriving home, Plaintiff realized she did not have her house keys which were in her purse in her vehicle that had been towed and impounded in Akron, New York.  Plaintiff was not able to retrieve her vehicle and purse until December 26, 2012.

When Plaintiff continued to have nausea and pain several days after the incident, Plaintiff contacted Edgar Bassig, M.D. ("Dr. Bassig"), her primary care physician, who ordered diagnostic imaging tests including CT scans of Plaintiff's head, MRIs of Plaintiff's right shoulder and cervical and lumbar spines, as well as X-rays of Plaintiff's left knee.  Plaintiff maintains Defendant's actions in forcibly extricating her from her vehicle, slamming Plaintiff onto the ground on her face, applying handcuffs, then dragging Plaintiff across the parking lot to a waiting ambulance where Plaintiff was lifted onto a gurney, face up but still hand-cuffed,[4] caused Plaintiff to sustain a large hematoma on her left knee that took two weeks to heal, a shoulder injury that required surgical repair to her right rotator cuff, bruises on her left cheek, a neck injury, and a laceration on her left brow requiring stitches to close.

Defendant Richard maintains that he encountered Plaintiff in a different parking lot than the lot identified by Plaintiff, specifically, in the parking lot for the Tops grocery store located on the west side of Transit Road in East Amherst, about 1 ½ miles north of the parking lot identified by Plaintiff, that Plaintiff's vehicle was running when Defendant approached it, and that his initial reason for asking Plaintiff to exit the vehicle was to

---

[4] Plaintiff does not know when the handcuffs were removed, but agrees that she was no longer handcuffed when Rachel strapped down Plaintiff's hands.  Plaintiff's Dep. Tr. at 49.

have Plaintiff perform field sobriety tests, but that once Plaintiff was outside the vehicle, her actions toward Defendant and failure to cooperate did not permit Defendant to direct performance of such tests.  After extricating Plaintiff from the vehicle by pulling and lifting her, Defendant immediately placed Plaintiff against the vehicle's rear driver's side door, positioning Plaintiff to face the vehicle to allow Defendant to handcuff Plaintiff. According to Defendant, Plaintiff physically resisted Defendant's attempts to apply handcuffs by moving her arms about and twisting her hips, as well as yelling and swearing at Defendant, but Defendant was able to apply the handcuffs to Plaintiff by "tak[ing] her to the ground," Defendant's Dep. Tr.[5] at 79, and kneeling next to Plaintiff. After the handcuffs were applied, Plaintiff stood up and Defendant then walked Plaintiff to Defendant's patrol vehicle which Plaintiff entered, and then drove Plaintiff to an ambulance located across Transit Road in a different parking lot than where Plaintiff's vehicle was located.  Whether Plaintiff's vehicle was running when Defendant encountered Plaintiff pulled over in the parking lot on December 25, 2012 is disputed. *Compare* Trial Tr. 1[6] at 106 (Defendant Richard testifying he did not walk over to the ambulance to request assistance because Plaintiff's vehicle was still running and he feared she might drive away), with Plaintiff's Dep. Tr. at 19 (Plaintiff testifying that after pulling into the parking lot, she turned off her vehicle prior to vomiting).

Also not clear from the record is when Defendant placed Plaintiff under arrest. Plaintiff maintains she was not under arrest until she was placed on the ambulance gurney.  Plaintiff's Response at 6-7 (citing Defendant's Dep. Tr. at 102).  Although

---

[5] References to "Defendant's Dep. Tr." are to the pages of the transcript of Defendant Richard's May 8, 2017 deposition filed as Defendants' Exh. G (Dkt. 30-9).

[6] References to "Trial Tr. 1" are to the pages of the transcript of Plaintiff's July 16 and 17, 2014 trial in Amherst Town Court on the charges, filed in two volumes, specifically, Defendants' Exhs. D (Dkt. 30-6) ("Trial Tr. 1") and E (Dkt. 30-7) ("Trial Tr. 2").

Defendant Richard testified at his deposition that he did not formally arrest Plaintiff until Plaintiff was in the ECMC emergency room where Defendant gave Plaintiff the appearance ticket charging Plaintiff with driving while intoxicated, resisting arrest, obstruction governmental administration, and disorderly conduct, Defendant's Dep. Tr. at 70-71, 102-03, at Plaintiff's trial on such charges, Defendant Richard testified Plaintiff was under arrest once he extricated Plaintiff from her vehicle and before Defendant applied the handcuffs, and before bringing Plaintiff to the ambulance.  Trial Tr. 1 at 112, 116.  Following trial on all four charges in Amherst Town Court on July 16 and 17, 2014, Plaintiff was found guilty of the first three counts, including driving while intoxicated, resisting arrest, and obstructing governmental administration, but no verdict was taken on the fourth count of disorderly conduct.  Trial Tr. 2 at 218.

Plaintiff claims that because she experienced nausea for three weeks after the ordeal, was unable to keep down any food other than jello and bread, and was very disoriented and dizzy, her treating chiropractor and orthopedic surgeon suspected Plaintiff also sustained a concussion.  Plaintiff's injuries caused her to miss work for one month following the incident.  Plaintiff believes at some point she blacked out and that when she arrived at the hospital, her face was covered in blood, her clothes were soaking wet from lying on the parking lot pavement, and the left knee of her pants was ripped.  According to Plaintiff, based on the time that elapsed from when she left the party to when she arrived at ECMC, she was laying on the parking lot for an extended period of time.  Although Plaintiff asserts she was never inside Defendant's patrol vehicle, a pair of Plaintiff's reading glasses, which Plaintiff maintains would have been inside her purse, were later discovered in Defendant's patrol vehicle.

## DISCUSSION

### 1.      Summary Judgment

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party, *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011), and summary judgment may not be granted based on a credibility assessment.  *See Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51, 55 (2d Cir. 2017) ("Adverse parties commonly advance conflicting versions of the events throughout a course of litigation. In such instances on summary judgment, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." (citations, quotation marks, and brackets omitted)).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  "A fact is material if it 'might affect the

outcome of the suit under governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)). A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof. *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)). Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133,137 (2d Cir. 2009)).

In the instant case, Defendants argue in support of summary judgment Plaintiffs' claims are wholly implausible requiring dismissal in their entirety, Defendants' Memorandum at 7-10, Defendants are qualifiedly immune from liability on the Fifth

Claim asserting excessive force, *id*. at 10-13, the record fails to establish Defendant Richards used excessive force to support the Fifth Claim, *id*. at 13-14, the Fifth Claim must be dismissed as against Defendant Howard for lack of personal involvement, *id*. at 15, the Fourth Claim alleging failure to train and supervise against Defendant Howard must be dismissed in the absence of any evidence establishing Defendant Howard knew or should have known of Defendant Richard's alleged putative propensity for the conduct that caused Plaintiff's injuries, *id*. at 16-18, the Second Claim sounding in intentional tort, specifically, state law claims for assault and battery, must be dismissed for the same reasons Plaintiff's excessive force claims under § 1983 must be dismissed, *id*. at 18-19, Plaintiff's Third Claim alleging negligence is barred where based on the same conduct on which Plaintiff's excessive force claim is based, *id*. at 19-22, and if summary judgment is not granted on all of Plaintiff's claims, then Plaintiff's Fifth Claim and request for punitive damages must be dismissed as against both Defendants in their official capacities. *Id*. at 22-24. In opposition, Plaintiff disputes that her claims are implausible, Plaintiff's Response at 8-10, Defendants are not entitled to qualified immunity, *id*. at 10-13, the record shows the amount of force used by Defendant Richard was not objectively reasonable, *id*. at 13-16, Defendant Howard may be held liable under § 1983 for failing to properly train Richard, *id*. at 16-19, and Plaintiff can recover punitive damages. *Id*. at 19-20. In further support of summary judgment, Defendants argue Plaintiff's opposing Rule 56 statement of facts is inadequate such that Defendants' Statement of Facts should be deemed admitted, Defendants' Reply at 3-4, insofar as Plaintiff fails to argue in opposition to summary judgment on Plaintiff's Second and Third Claims, Plaintiff should be considered to have conceded that

Defendants are entitled to summary judgment on such claims, *id*. at 4, Plaintiff fails to refute Defendants' argument regarding the implausibility of Plaintiff's claims, *id*. at 4-5, Defendants remain entitled to qualified immunity, *id*. at 6-11, and Plaintiff fails to raise an issue of fact precluding summary judgment as to Defendant Howard's liability under § 1983.  *Id*. at 11-12.  Based on the following, Defendant's Motion should be GRANTED in part and DENIED in part.

Preliminarily, Defendants maintain, Defendants' Memorandum at 5 (citing Dkt. 1-11 (February 28, 2018 Order of New York State Supreme Court Justice E. Jeannette Ogden)), and Plaintiff does not dispute, that Plaintiff's First Claim asserting false arrest was dismissed by the State Court prior to removal.  *See D.H. Blair & Co., Inc. v. Gottdiener*, 453 F.3d 95, 108 (2d Cir. 2006) (quoting *Sun Forest Corp. v. Shvili*, 152 F.Supp.2d 367, 387 (S.D.N.Y. 2001) ("It is well established that the district court takes the removed action in the posture in which it existed when it is removed from a state's court jurisdiction and must give effect to all actions and procedures accomplished in a state court prior to removal." (further citation, quotation marks, and brackets omitted)).  Accordingly, summary judgment should be GRANTED as to Plaintiff's First Claim.

The court also observes that in moving for summary judgment, Defendants heavily rely on the fact that Plaintiff was convicted of three of the four criminal counts with which she was charged in connection with the incident on December 25, 2012, including driving while intoxicated, resisting arrest, and obstruction governmental administration.  Although Plaintiff's convictions on such charges bars her First Claim for false arrest, which was dismissed while the action was in New York Supreme Court, the convictions are irrelevant to whether any force to which Plaintiff was subjected was

unreasonable.  *See Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir 1999)

("Victims of unreasonable searches and seizures may recover damages directly related

to the invasion of their privacy – including (where appropriate- damages for physical

injury, property damage, [and] injury to reputation . . . .").  Nor does the fact that Plaintiff

had preexisting injuries preclude the possibility that such injuries were exacerbated by

Defendant Richard, let alone that such exacerbation may be attributable to

unreasonable force.  *See Galunas v. Reynolds*, 2013 WL 316618, at * 7 (N.D.N.Y. Jan.

28, 2013) (fact that the plaintiff's medical records established he suffered from

preexisting chronic back issues did not preclude possibility that disc herniations were

exacerbations of previous condition based on use of force).  Accordingly, that Plaintiff's

First Claim for unlawful arrest has been dismissed, as well as that Plaintiff had some

preexisting injuries does not inform the balance of the court's discussion.

Also irrelevant to this motion are discrepancies between the location of the

parking lot as identified by Plaintiff as being the lot for a medical building located on the

east side of Transit Road,  Trial Tr. 2 at 78, 100, and Defendants' location of the parking

lot as being the lot for a Tops grocery store located approximately 1 ½ mile north on the

west side of Transit Road, Trial Tr. 1 at 49-50, a location with which Rachel concurred,

Trial Tr. 1 at 155-56, as well as discrepancies as to what beverages Plaintiff consumed

at the Christmas party, described at her trial as two beers,  Trial Tr. 2 at 73-74, and at

her deposition in connection with this action as two mixed drinks.  Plaintiff's Dep. Tr.[7] at

23.  Although Defendants maintain such discrepancies render Plaintiff's claim

---

[7] References to "Plaintiff's Dep. Tr." are to the pages of the transcript of Plaintiff's examination before trial conducted August 20, 2013 pursuant to New York Gen. Mun. Law § 50-h, filed as Defendants' Exh. A (Dkt. 30-3).

"implausible," Defendants' Memorandum at 7-10, the discrepancies have no bearing on the resolution of Plaintiff's claims.

Further, Defendants argue Plaintiff's Statement of Facts filed in opposition to Defendants' Statement of Facts fails to comply with the requirements of Local Rule of Civil Procedure – W.D.N.Y. Rule 56(a)(2) ("Local Rule 56(a)(2)"), because it does not indicate which of Defendants' proffered facts are contested, such that Defendants' Statement of Facts should be deemed admitted.  Defendants' Reply at 3-4.  Pursuant to Local Rule 56(a)(2), a party opposing summary judgment is required to respond to each separately enumerated paragraph with correspondingly numbered paragraphs containing a short and concise statement explaining why the nonmovant maintains the movant's asserted facts are disputed.  Local Rule 56(a)(2).  Should the non-movant fail to provide the responding statement of facts, each of the movant's uncontroverted statement of fact may be deemed admitted.  *Id*.  Nevertheless, the Second Circuit instructs that "[i]f a non-moving party fails to comply with local rules governing summary judgment, a district court may rely on a moving party's statement of undisputed facts as long as those facts are supported by the record."  *Marino v. Schult*, 764 Fed.Appx. 73, 74 (2d Cir. 2019) (citing *N.Y.S. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005)).  Accordingly, the court will consider undisputed only those factual statements set forth by Defendants if such statements are supported by the record.

## 2.      § 1983 Claim

Insofar as Plaintiff's claims seek damages for alleged violations of her constitutional rights pursuant to 42 U.S.C. § 1983 ("§ 1983"), which imposes civil liability

upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States, § 1983 does not itself provide a source of substantive rights, but instead provides the mechanism by which a plaintiff may seek vindication of federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). *See Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) ("Section 1983 . . . allows an action at law against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" (quoting 42 U.S.C. § 1983)). To succeed on a § 1983 claim, a plaintiff must establish the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1007). Further, it is basic that liability under § 1983 requires a defendant's personal involvement in the alleged deprivation of a federal rights. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) ("To establish a section 1983 claim, 'a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity.'" (quoting *Patterson*, 375 F.3d at 229)).

The elements of a § 1983 claim include (1) the deprivation of a federal constitutional or statutory right, and (2) by a person acting under color of state law. *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Thus, "[t]he first step in any such claim is to identify the specific

constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Graham*, 490 U.S. at 394; and *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). Here, Plaintiff's sole § 1983 claim is her Fifth Claim alleging she was subjected to excessive force in connection with her arrest on December 25, 2012, which asserts a Fourth Amendment claim. *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir.2018) ("'The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness standard.'"" (quoting *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015)).

A. **Time of Arrest**

Preliminarily, there is an unresolved material issue of fact as to when Plaintiff was placed under arrest. In particular, Defendant Richard has inconsistently stated Plaintiff was not arrested until he gave Plaintiff the appearance tickets when Plaintiff was in the ECMC emergency room, Trial Tr. 1 at 131; Defendant's Dep. Tr. at 102-04, as well as that Plaintiff was under arrest upon being extricated from her vehicle when Defendant first attempted to apply handcuffs. Defendant's Dep. Tr. 1 at 70-71; Trial Tr. 1 at 112, 116. Plaintiff maintains she was not under arrest until she received the appearance tickets at ECMC. Plaintiff's Dep. Tr. at 60-61. Precisely when Plaintiff was arrested is important because any force used against Plaintiff during her arrest would be subject to the Fourth Amendment's prohibition against the use of unreasonable force in making an arrest, *see Hemphill v. Schott*, 141 F.3d 412, 416-17 (2d Cir. 1998) (excessive force used by law enforcement officers in making arrest implicates the Fourth Amendment's prohibition on unreasonable searches, rather than the Fourteenth

Amendment's guarantee of substantive due process) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)), whereas the reasonableness of any force used against Plaintiff prior to that would be analyzed under the Fourteenth Amendment's substantive due process provision. *Id*. at 418 ("outside the context of an arrest, a plaintiff may make claims of excessive force under § 1983 under the Due Process Clause of the Fourteenth Amendment") (citing *Rodriguez v. Phillips*, 66 F.3d 470, 477 (2d Cir. 1995)). The distinction is critical because the analysis differs depending on which right is violated. *Compare Hemphill*, 141 F.3d at 417-19 (use of force is excessive under Fourth Amendment if it is more than what is reasonable under the circumstances), with *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 252 (2d Cir. 2001) ("the substantive due process guarantee of the Fourteenth Amendment protects individuals from 'conscience-shocking' exercises of power by government actors," and "malicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience."). Accordingly, should the District Judge agree with the following recommendation that summary judgment be denied on Plaintiff's § 1983 claim alleging excessive force, the jury should first be instructed to determine at what point during the December 25, 2012 incident Plaintiff was under arrest so as to know which standard applies, *i.e.*, more force than was necessary in violation of the Fourth Amendment, or force that shocks the conscience in violation of the Fourteenth Amendment.[8]

---

[8] The court notes the parties do not discuss whether Plaintiff's guilty disposition on the resisting arrest count implies Defendant Richard was trying to arrest Plaintiff when he first extricated Plaintiff from her vehicle.

### B.    Official Capacity

Defendants argue although Plaintiff does not indicate whether she sues Defendants in their individual or official capacities on the § 1983 claims, insofar as the Amended Complaint is construed as asserting claims against Defendants in their official capacities, Plaintiff has failed to allege a specific municipal policy or custom supporting such claim such that Defendants are entitled to summary judgment.  Defendants' Memorandum at 22-23.  Plaintiff offers no argument in opposition on this point.

It is settled that a defendant's liability in his official capacity requires that action taken color under of state law must have been pursuant to the municipality's official policy or custom because an official capacity action is not against the official in his personal capacity but, rather, is considered an action against the government entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").  As such, "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  *Id*. (citing cases).  Here, Plaintiff has not identified what policy or custom Defendants were following in furtherance of the alleged constitutional violations.  Accordingly, Defendants' Motion for summary judgment should be GRANTED insofar as Defendants are sued in their official capacities.

### C.    Personal Involvement

Insofar as Plaintiff's Fifth Claim is alleged against both Defendants, summary judgment should be granted in favor of Defendant Sheriff Howard for lack of personal involvement.  A defendant's personal involvement in the deprivation of a federal

constitutional right is required for liability under § 1983. *Johnson*, 239 F.3d at 254. *See McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) ("In this Circuit personal involvement of defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). "'Because vicarious liability is inapplicable to . . . § 1983 suits,' [the plaintiff] must raise a genuine dispute as to whether 'each Government-official defendant, through the official's *own individual actions*, has violated the Constitution.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added)). Although it is settled that a plaintiff must establish the defendant was personally involved in the alleged deprivation to obtain relief under § 1983, *Warren*, 823 F.3d at 136, the required personal involvement is not satisfied by establishing a link in the chain of command, *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); nor may a supervisory defendant be held liable on a § 1983 claim based on *respondeat superior*, absent a showing of "'a deliberate, intentional act of the part of the defendant to violate the plaintiff's legal rights.'" *Tangreti v. Bachman*, 983 F.3d 609, 618-19 (2d Cir. 2020) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010)). Rather, the requisite "[p]ersonal involvement may be shown by 'direct participation,' which requires in this context 'intentional participation in the conduct constituting a violation of the victim's rights by one who know of the facts rendering it illegal.'" *Victory*, 814 F.3d at 67 (quoting *Provost v. City of Newburgh*, 262

F.3d 146, 155 (2d Cir. 2001)).  Furthermore, conclusory allegations of department policy deficiencies are insufficient to establish a viable excessive force claim based on supervisory liability.  *See Tangreti*, 983 F.3d at 618-19 (reversing denial of summary judgment to supervisory official where the plaintiff failed to plead and prove the official, through its own actions, violated the Constitution).

In the instant case, Plaintiff's claim against Defendant Sheriff Howard is limited to conclusory allegations in the Amended Complaint that Defendant Richard's asserted unlawful conduct "arose directly from and as a result of systemic deficiencies in policies, procedures, customs, and practices of the Defendant Erie County Sheriff's Department . . . ."  Amended Complaint ¶ 50.  Significantly, Plaintiff does not point to any specific Erie County Sheriff's Department policy, procedure, custom or practice which Plaintiff maintains is defective, nor to any evidence establishing Defendant Howard was actively involved in the creation or maintenance of any such policy, procedure, custom, or practice so as to violate the constitutional rights of Plaintiff though personal involvement. Accordingly, summary judgment should be GRANTED in favor of Defendant Howard on Plaintiff's Fifth Claim alleging excessive force.

### D.   Excessive Force

As discussed, Discussion, *supra*, at 16-17, the material issue of fact as to when Plaintiff was arrested determines the analysis applicable to this claim.  In particular, assessing whether the use of force in making arrest was reasonable so as not to violate the Fourth Amendment, "'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight.'"  *Outlaw*, 884 F.3d at

366 (quoting *Graham*, 490 U.S. at 396).  The reasonableness determination must

include consideration of the fact that law enforcement officers often are forced to make

quick decisions under stressful and rapidly evolving circumstances rendering the

calculation of what amount of force is reasonable difficult.  *Graham*, 490 U.S. at 396-97.

Relevant factors include the severity of the crime at issue, whether the suspect posed

an immediate threat to the safety of the officers or others, and whether the suspect was

actively resisting arrest.  *Brown*, 798 F.3d at 100 (citing *Graham*, 490 U.S. at 396).  To

support an excessive force claim, Plaintiffs must establish that Defendant Richard used

more than *de minimis*[9] force.  *Feliciano v. Thomann*, 747 Fed.Appx. 885, 887 (2d Cir.

2019).  "Even conduct that caused some physical pain and resulted in side effects need

not be compensated if a jury finds that such injuries were *de minimis*."  *Ali v. Kipp*, 2016

WL 7235719, at *7 (E.D.N.Y. Dec. 13, 2016) (citing *Kerman v. City of New York*, 374

F.3d 93, 123 (2d Cir. 2004) (denying § 1983 plaintiff's motion for a new trial where

despite prevailing on unlawful seizure claim, the plaintiff's claimed injuries lacked

objective support or credibility and were relatively minor).  Nevertheless, while "not

every push or shove constitutes excessive force," *Lennon v. Miller*, 66 F.3d 416, 426

(2d Cir. 1995) (citing *Graham*, 490 U.S. at 396), a show of force by an officer that is

overly disproportionate to the risk of harm may support a claim for excessive force.

*Gersbacher v. City of New York*, 2017 WL 4402538, at *11 (S.D.N.Y. Oct. 2, 2017)

(denying defendant police officers summary judgment on plaintiff's excessive force

claim where evidence showed that plaintiff verbally opposed the arrest, but did not

attempt to flee or attack the arresting officer, calling into question whether the force

---

[9] "*De minimis*" is defined as "trifling" or "negligible."  *De minimis*, Black's Law Dictionary (10th ed. 2014).

used by the arresting officer, which caused relatively minor injuries, was excessive).

The "reasonableness of a particular use of force must be judged from the perspective of

a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Brown*,

798 F.3d at 100-01.

  In contrast, assuming, *arguendo*, Plaintiff was not under arrest when Defendant

Richard removed Plaintiff from her vehicle in connection with a safety check on

Plaintiff's well-being, there remains a question as to whether excessive force was used.

*Johnson*, 239 F.3d at 251-53.  In the "non-seizure, non-prisoner context," claims of

excessive force are analyzed under the Fourteenth Amendment's substantive due

process guarantee which requires consideration of "the need for the application of force,

the relationship between the need and the amount required of force that was used, the

extent of the injury inflicted, and whether the force was applied in a good faith effort to

maintain or restore discipline or maliciously or sadistically for the very purpose of

causing harm."  *Id*. at 251-52 (internal quotation omitted).  With regard to the last factor,

"if the force was 'maliciously or sadistically employed for the very purpose of causing

harm' in the absence of any legitimate government objective and it results in substantial

emotional suffering  or physical injury, then the conduct is presumably unconstitutional."

*Id*. (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)).

  Whether analyzed under the Fourth or Fourteenth Amendment, the use of *de*

*minimis* force is insufficient to support an excessive force claim under § 1983, *Boyler v.*

*City of Lackawanna*, 287 F.Supp.3d 308, 323 (W.D.N.Y. 2018) (citing *Regels v.*

*Giardono*, 113 F.Supp.3d 574, 599 (N.D.N.Y. 2015) ("[A] *de minimis* use of force will

rarely suffice to state a constitutional claim, *de minimis* injury can serve as conclusive

evidence that *de minimis* force was used.")).  In the instant case, however, the injuries sustained by Plaintiff during her encounter with Defendant Richard, including a laceration to the face requiring stitches to close, abrasions and contusions to Plaintiff's knees, and internal derangement to Plaintiff's right shoulder, are more than *de minimis*. Such injuries are also inconsistent with Defendant Richard's assertion, Defendant's Dep. Tr. at 84, that upon removing Plaintiff from her vehicle, Plaintiff did a "face-plant," *i.e.*, landed face down, onto the parking lot pavement.  *Id*. at 79.  Significantly, the photo of Plaintiff's submitted by Defendants in support of summary judgment, Plaintiff's Exh. F at 7, shows more than a single laceration to Plaintiff's head, including numerous cuts about her forehead, left cheek, and nose, as well as bruising on Plaintiff's left cheek and nose, and is consistent with Plaintiff's assertion that blood was running down the front of her and her clothing was ruined by blood stains,[10] Plaintiff's Affidavit ¶ 18, injuries difficult to reconcile with a mere "face-plant."  *See also* Defendant's Dep. Tr. at 80 (referencing Plaintiff's blood-stained clothing had been marked as an exhibit).  Even if, as Defendant maintains, Plaintiff did not report the injuries to her knees and shoulder at ECMC, the failure to make such complaints could be interpreted as consistent with Plaintiff's intoxicated state, a fact not relied upon by Defendant in justifying Defendant's actions.  Accordingly, Plaintiff's injuries are evidence sufficient for a reasonable jury to consider Richard's use of force was excessive under either the Fourth or Fourteenth Amendment depending on how the jury reconciles the facts at trial.

Moreover, the descriptions of the incident vary widely with Plaintiff maintaining she was violently extricated from her vehicle and dragged some distance across the

---

[10] Plaintiff testified at her trial the photo was taken at ECMC just prior to receiving stitches for the laceration on her forehead.  Trial Tr. 2 at 90.

parking lot to the ambulance, Plaintiff's Affidavit ¶¶ 15-16, while Defendant Richard

asserts he extricated Plaintiff from her vehicle by lifting and pulling her, but that

Plaintiff's actions in resisting caused her to land outside the vehicle on her face (a so-

called "face-plant"), Defendant's Dep. Tr. at 69-70, 74-79, and that after applying the

handcuffs to Plaintiff, Defendant placed Plaintiff in his patrol vehicle and, contrary to

Plaintiff's recollection, drove her across the parking lot to the waiting ambulance.[11]

Defendant's Dep. Tr. at 92-95.  What is not clear, however, is why Defendant Richard

did not radio to dispatch and request the ambulance come to Plaintiff's vehicle,

especially in light of Defendant's repeated assertions that although he suspected

Plaintiff was inebriated, he was not certain at that point that she was, and concurred

Plaintiff could have been experiencing some medical emergency such as a coronary,

Defendant's Dep. Tr. at 47-48, in which case moving Plaintiff would have been ill-

advised.

Accordingly, on this record, summary judgment in favor of Defendant Richard on

Plaintiff's Fifth Claim alleging excessive force should be DENIED.

### E.    Qualified Immunity

Defendants argue that even if their actions could be found in violation of

Plaintiff's Fourth or Fourteenth Amendment[12] rights, they are qualifiedly immune from

§ 1983 liability for such violations because reasonable officers could disagree as to the

reasonableness of their actions.  Defendants' Memorandum at 10-13; Defendants'

---

[11] Despite placing Plaintiff in handcuffs up removing her from her vehicle, Defendant Richard maintains he had not yet decided whether to arrest Plaintiff, but applied the handcuffs in an attempt to get Plaintiff to calm down.  Defendant's Dep. Tr. at 77.

[12] The parties do not address Plaintiff's Fifth Claim under the Fourteenth Amendment, but in the interest of a complete analysis consistent with the District Judge's referral order, the court addressed the qualified immunity argument under both the Fourth and Fourteenth Amendments.

Reply at 6-11.  Plaintiff argues in opposition that Defendant's use of excessive force in arresting Plaintiff on December 25, 2012, violated Plaintiff's clearly established Fourth Amendment rights.  Plaintiff's Response at 10-13.

"Qualified immunity shields law enforcement officials from § 1983 claims for money damages provided that their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware."  *Zalaski v. City of Hartford*, 723 F.3d 382, 388 (2d Cir. 2013) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), and *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).  "An officer is entitled to qualified immunity if '*any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful.'"  *Muschette ex rel. A.M. v. Gionfriddo*, 910 F.3d 65, 70-71 (2d Cir. 2018) (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (italics in original)).  A qualified immunity analysis asks two questions including whether "the facts show that the office's conduct violated plaintiff's constitutional rights," and, if so, whether "the right was clearly established at the time of defendant's actions."  *Zalaski*, 723 F.3d at 388 (citing *al-Kidd*, 563 U.S. at 735, and *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007)).  Courts are no longer required to sequentially answer these two questions; rather, it is particularly appropriate to address the second question first where the first question "turns on difficult or novel questions of constitutional or statutory interpretation, but it is nevertheless clear that the challenged conduct 'was not objectively unreasonable in light of existing law.'"  *Id*. at 389 (quoting *Coolick v. Hughes*, 699 F.3d 211, 219-20 (2d Cir. 2012), and citing *al-Kidd*, 563 U.S. at 735.

"To determine whether a right was clearly established, we consider 'whether the right in question was defined with reasonable specificity,' 'whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question,' and 'whether under preexisting law a reasonable defendant officer would have understood that his or her acts were unlawful.'" *Barnes v. Furman*, 629 Fed.Appx. 52, 55-56 (2d Cir. Oct. 22, 2015) (quoting *Dean v. Blumenthal*, 577 F.3d 60, 68 (2d Cir. 2009)).  Even if the right at issue were clearly established, if it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 568-69 (2d Cir. 1996).  This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on the [legality of the defendant's actions]."  *Malley v. Briggs*, 475 U.S. 335 (1986). "The availability of the defense depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed."  *Weyant v. Okst*, 101 F.3d 845, 858 (2d Dir. 1991) (internal quotation marks and citation omitted).  Also to be considered in determining whether a police officer is qualifiedly immune from personal liability under the Fourth Amendment is "whether [the officer] is entitled to a qualified good faith immunity based on his following the policy and training of the police department . . . ."  *Dodd v. City of Norwich*, 827 F.2d 1, 4 (2d Cir. 1987).  Where, however, the objective reasonableness of an officer's actions depends on disputed facts, summary judgment based on qualified immunity is properly denied.  *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir. 1991).

Accordingly, "qualified immunity provides a broad shield. It does so to ensure 'that those who serve the government do so with the decisiveness and the judgment required by the public good.'" *Zalaski*, 723 F.3d at 389 (quoting *Filarsky v. Delia*, 566 U.S. 377, 390 (2012)). "Toward that end, it affords officials 'breathing room to make reasonable but mistaken judgments' without fear of potentially disabling liability." *Id*. (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)). "In sum, qualified immunity employs a deliberately 'forgiving' standard of review," providing "'ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Id*. (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010), and *Malley*, 475 U.S. at 341).

"'[T]he matter of whether a defendant official's conduct was objectively reasonable, *i.e.*, whether a reasonable official [in the defendant's position] would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact.'" *Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018) (quoting *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)) (bracketed material on original). Factual questions material to qualified immunity are to be resolved by the fact finder. *Id*. (citing *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). "'Once the [factfinder] has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court.'" *Id*. (quoting *Zellner*, 494 F.3d at 368).

Here, it is well-settled under the Fourth Amendment that on December 25, 2012, that Defendant Richard was not permitted to use force in excess of what was

reasonable to effect Plaintiff's arrest.  *See Lennox v. Miller*, 968 F.3d 150, 155-57 (2d Cir. 2020) (denying summary judgment based on qualified immunity to defendant police officer where it could not be said as a matter of law the amount of force used to arrest the plaintiff was reasonable in light of factual disputes including whether the plaintiff attempted to flee, the extent of the plaintiff's physical resistance to the arrest, and the amount of force used by the defendant officer).  Also, the court's research reveals no case under the Fourteenth Amendment holding substantive due process is violated by a law enforcement officer's use of force so in excess of what is necessary under circumstances similar to those Defendant Richard encountered, *i.e.*, needing to determine of what, if any, assistance Plaintiff was in need upon encountering Plaintiff in her vehicle in the parking lot on December 25, 2012.  Nevertheless, "for qualified immunity to be operative, the right in question cannot be too abstract but rather must be 'clearly established' in a more particularized, and hence a more relevant sense.'" *Johnson*, 239 F.3d at 253 (finding that despite the absence of any Second Circuit precedent expressly holding students have a substantive due process right not to be struck by a teacher, such requirement would construe the Fourteenth Amendment's substantive due process right too narrowly) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Rather, "this right to be free from excessive force is an across-the-board constraint on all government officials, regardless of the particular position they hold.  Simply stated, it defines an irreducible minimum threshold that no government actor – no matter what his or her position and no matter what level of government he or she operates – may constitutionally cross." *Id.* (citing cases).  The Supreme Court recognizes a "culpability continuum for determining the applicability of qualified

immunity to excessive force claims: conduct intended to injure in some way unjustifiable by any government interests is the sort of official action most likely to rise to the conscience-shocking level . . . ." *Johnson*, 239 F.3d at 254 (quoting *County of Sacramento*, 523 U.S. at 849-50) (internal citations omitted).

Here, regardless of when a trier of fact determines Plaintiff sustained the injuries during Plaintiff's contact with Defendant, the same disputed issues of fact precluding summary judgment on the Fifth Claim asserting excessive force in violation of the Fourth Amendment based on arresting Plaintiff, or in violation of the Fourteenth Amendment while assisting Plaintiff on December 25, 2012, could also establish that a reasonable police officer confronted with similar circumstances would not have believed the treatment of Plaintiff was in accord with the Fourth Amendment or Fourteenth Amendment.  Accordingly, there are unresolved issues of fact preventing summary judgment based on qualified immunity under both the Fourth and Fourteenth Amendments, *Rivera*, 928 F.2d at 607, including whether when Defendant Richard removed Plaintiff from her vehicle, Richard was effecting an arrest for driving under the influence, or attempting to move Plaintiff to the ambulance for medical assistance.

Defendants' motion should be DENIED as to qualified immunity.

3.     **State Law Claims**

Defendants also seek summary judgment on Plaintiff's claims under New York law including the Second Claim alleging intentional assault, Third Claim alleging negligence, and Fourth Claim alleging failure to train/supervise.  Defendants' Memorandum at 16-22.  Plaintiff does not argue in opposition with regard to summary judgment on the intentional assault and negligence claims, but maintains Defendant

Howard failed to properly train his employees in the use of force and acquiesced in a custom or policy that allowed officers to use excessive force.  Plaintiff's Response at 16-19.  In further support of summary judgment, Defendants argue that insofar as Plaintiff fails to oppose summary judgment on the intentional assault and negligence claims, Plaintiff has abandoned such claim, Defendants' Reply at 4, and has failed to demonstrate the existence of a material issue of fact with regard to the failure to train claim.  *Id*. at 11-12.

### A.    Failure to Oppose

Preliminarily, the court addresses Defendants' argument, Defendants' Response at 4, that Plaintiff, by failing to argue in opposition to summary judgment on her Second Claim alleging intentional assault and battery, as well as on her Third Claim alleging negligence, has abandoned such claims.  Fed.R.Civ.P. 56 provides for entering summary judgment against a party who fails to oppose a summary judgment motion "if appropriate."  Fed.R.Civ.P. 56(a).  Nevertheless, the Second Circuit instructs that "where the non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'"  *Vermont Teddy Bear Co., Inc. v. 1-800-Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 677, 680 (2d Cir. 2001)).  Here, despite Plaintiff's failure to oppose summary judgment on her Second and Third Claims, as discussed below, material issues of fact preclude summary judgment on these claims.  Accordingly, this aspect of Defendants' Motion should be DENIED.

### B.    Intentional Assault/Battery

Plaintiff's Second Claim alleges Defendant Richard intentionally assaulted and battered Plaintiff in extricating Plaintiff from her vehicle, then body-slamming Plaintiff to the pavement and dragging Plaintiff in a face down position across the pavement to any ambulance, causing Plaintiff to sustain injuries including various lacerations, abrasions, contusions, strains, sprains, dislocations, and internal derangement, to her face, head, shoulders, arms, upper body, knees, and legs.  Amended Complaint ¶ 18.  In New York, "[a]n 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact."  *United Nat. Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993) (citing cases).  "A 'battery' is an intentional wrongful physical contact with another person without consent."  *Id*.  In contrast to penal law which sets forth specific elements for the various offenses and degrees of offenses, "[i]n the civil context . . . the common meanings of 'assault' and 'battery' subsume all forms of tortious menacing and unwanted touching."  *Id*.

In arguing for summary judgment on this claim, Defendants rely on the Second Circuit's determination in *Humphrey v. Landers*, 344 Fed.Appx. 686, 688 (2d Cir. 2009). that "[e]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical."[13]  According to Defendants, Plaintiff's intentional tort claims are barred by the same analysis that bars Plaintiff's § 1983 claims against Defendant Richard.  Defendant's Memorandum at 19.  The same reasons for which the undersigned recommends denying summary judgment on the § 1983 claims against

---

[13] The court notes that unlike the state common law torts of assault and battery, "'it is well established that specific intent is not a prerequisite to liability under § 1983.'"  *Hudson v. New York City*, 271 F.3d 62, 68 (2d Cir. 2001) (quoting *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992)).

Defendant Richard also precludes summary judgment on the intentional tort claims. *See* Discussion, *supra*, at 20-24.  As such, summary judgment on the Second Claim for the intentional torts of assault and battery should be DENIED.

### C.    Negligence

In support of summary judgment on Plaintiff's Third Claim alleging negligence, Defendants argue "where the underlying claim on which a negligence claim is based rests on an arrest, imprisonment, and prosecution of the plaintiff, the '[p]laintiff may not recover under broad principles of general negligence, . . . but  must proceed by way of the traditional remedies of false arrest and imprisonment and malicious prosecution.'" Defendants' Memorandum at 19-20 (quoting *Boose v. City of Rochester*, 421 N.Y.S.2d 740, 744 (4th Dep't 1979)).  In the instant case, however, given Defendant Richard's insistence that Plaintiff was not under arrest until after she was taken to the hospital, Defendant's Dep. Tr. at 70-71, 102-03, which is after Plaintiff allegedly sustained her injuries, Plaintiff's negligence claim does not rest on her arrest.  Accordingly, summary judgment on Plaintiff's Third Claim should be DENIED.

### D.    Failure to Train

Defendants argue is support of summary judgment on Plaintiff's Fourth Claim alleging against Defendant Howard failure to train that Plaintiff cannot establish the essential element of such claim, to wit, that Howard knew or should have know of Defendant Richard's propensity for the conduct that caused Plaintiff's injuries. Defendants' Memorandum at 16-18.  In opposition, Plaintiff maintains Howard can be liable under § 1983 for failure to train for maintaining unwritten policies and customs that allowed Defendant Richard to engage in unlawful behavior against Plaintiff.  Plaintiff's

Response at 16-19. In further support of summary judgment, Defendants assert Plaintiff has conflated her § 1983 claim asserted against both Defendants with her failure to train claim asserted under New York law against Defendant Howard, but still fails to point to any evidence to support such claim.  Defendants' Reply at 11-12,

Insofar as Plaintiff asserts a state claim based on failure to train, summary judgment should be GRANTED in favor of Defendant Howard because Plaintiff fails to point to any evidence supporting a finding that Defendant Howard was directly involved in Defendant Richard's training.  *See Bouche v. City of Mount Vernon*, 2012 WL 987592, at * 9 (S.D.N.Y. Mar. 23, 2012) ("'A claim for negligent hiring, retention, supervision and training is based on the employer's direct negligence."  (quoting *Saldana v. Village of Port Chester*, 2010 WL 6117083, at *5 (S.D.N.Y. July 10, 2010))).

## 4.    Punitive Damages

Defendants argue Plaintiff's request for punitive damages must be dismissed because punitive damages may not be recovered in a § 1983 action against a municipal entity or municipal  employees sued in their official capacities.  Defendants' Memorandum at 24.  According to Defendants, because Plaintiff's § 1983 claims are precluded against Defendants in their official capacities, Plaintiff cannot obtain punitive damages on such claims.  *Id*.  In opposition, Plaintiff maintains that she may recover punitive damages against Defendants in their individual capacity if their conduct was malicious or wanton, which is a matter reserved for the jury.  Plaintiff's Response at 19-20.  Defendants do not argue in further support of summary judgment on this issue.

As Defendants argue, insofar as Defendants are sued in their official capacity under § 1983, such claims are claims against a municipality which the Supreme Court

has held are immune from punitive damages under § 1983.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding "a municipality is immune from punitive damages under 42 U.S.C. § 1983").  Nevertheless, such immunity does not extend to Defendants sued in their individual capacities on the § 1983 claims and the state claims, and should Plaintiff prove her tort claims at trial, she can seek punitive damages on such claims.  *See DiSorbo v. Hoy*, 343 F.3d 172, 187-88 (2d Cir. 2003) (jury can assess punitive damages against defendant law enforcement officer in his individual capacity in connection with § 1983 claims provided "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others," and for state torts "where there is some showing of wanton, malicious, or cruel conduct."  *Downing v. King*, 2007 WL 4191765, at * 3 (N.D.N.Y. Nov. 26, 2007) (quoting *Pepe v. Maklansy*, 67 F.Supp.2d 186, 187-88 (S.D.N.Y. 1999) ("'It is generally recognized that, in cases of personal torts, 'vindictive actions,' such as assault and battery . . . where the elements of fraud, malice, gross negligence, cruelty, or oppression are involved, punitive or exemplary damages may be recovered.'" (quoting *Walsh v. Segale*, 70 F.2d 698, 699 (2d Cir. 1934))).  Further, although not addressed by the parties, municipalities may not be vicariously liable for punitive damages on the state law claims.  *See Westbrooks v. City of Buffalo*, 2014 WL 297107, at * 6 (W.D.N.Y. Jan. 27, 2014).

Accordingly, Defendants motion for summary judgment on Plaintiff's request for punitive damages should be GRANTED as to the § 1983 and state claims asserted against Defendants in their official capacities, and should be DENIED as to the § 1983 and state claims asserted against Defendants in their individual capacities.

## <u>CONCLUSION</u>

Based on the following, Defendants' Motion (Dkt. 30) should be GRANTED in part and DENIED in part; the matter should be scheduled for trial on Plaintiff's Second, Third, and Fifth Claims for Relief against Defendant Richard.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 3rd, 2021
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 3rd, 2021
                   Buffalo, New York