UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FILED
JAN 2 7 2022
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

_____

BOBBIE L. MAEL,

        Plaintiff,

    v.                                    18-CV-378 (JLS) (LGF)

TIMOTHY B. HOWARD, and
DEPUTY LEE RICHARD,

        Defendants.

_____

## DECISION AND ORDER

Plaintiff Bobbie Mael commenced this action on December 10, 2013, in New York Supreme Court, Erie County. Summons and Complaint, *Mael v. Howard*, No. 804258/2013 (N.Y. Sup. Ct. Dec. 10, 2013), ECF No. 1. Mael's case stems from a December 25, 2012 encounter with Defendant Richard, an Erie County Sheriff's Deputy, during which she alleges that she was "body-slammed" onto and "dragged" across pavement. *See* Dkt. 1-12 ¶ 18. Her amended complaint sets forth these counts: (1) false arrest[1] (against Defendants Howard and Richard); (2) intentional assault (against Defendants Howard and Richard); (3) negligence (against Defendants Howard and Richard); (4) failure to train/supervise (against Defendant Howard); and (5) excessive force under 42 U.S.C. § 1983 (against Defendants Howard and Richard). *See* Dkt. 1-12.

_____

[1] The State Court granted Mael's motion to amend her complaint but dismissed her first cause of action. Dkt. 1-11, at 3.

Defendants removed the case to this Court on March 26, 2018.  Dkt. 1.  The case was referred to Magistrate Judge Leslie G. Foschio to hear and report on all dispositive motions.  Dkt. 2; Dkt. 50.  The parties engaged in discovery (*see* Dkt. 20), and Defendants moved for summary judgment on August 1, 2019 (Dkt. 30).  Mael responded in opposition on October 1, 2019 (Dkts. 39-43), Defendants replied on October 9, 2019 (Dkt. 44), and Mael filed a sur-reply on October 10, 2019 (Dkt. 46).  On May 3, 2021, Judge Foschio issued a Report and Recommendation ("R&R"), recommending that the Court grant in part and deny in part Defendants' motion for summary judgment.  Dkt. 52, at 35.

Defendants objected to the R&R on May 17, 2021, for the following reasons:

- The R&R failed to consider properly the effect of Mael's criminal convictions (Dkt. 54, at 3-5);

- Judge Foschio "perceived . . . [a] discrepancy in the record concerning the time of arrest and the extent of plaintiff's alleged injuries," which does not exist or is irrelevant (*id.* at 2, 5-8);

- Judge Foschio used an incorrect standard in analyzing whether Richard's force was reasonable and erred in analyzing both the cause of Mael's alleged injuries and her failure to mention certain injuries while at the Erie County Medical Center ("ECMC") (*id.* at 8-10);

- The R&R failed to consider the implausibility of Mael's claims (*id.* at 12-14); and

2

- Judge Foschio erred in recommending that the Court deny qualified immunity (*id.* at 10-12) and permit the state law claims to proceed (*id.* at 14-15).

Mael filed opposition papers on June 23, 2021 (Dkt. 58), which Defendants responded to on July 9, 2021 (Dkt. 59).  The parties appeared before this Court on November 1, 2021 (Dkt. 71) and submitted post-argument letter briefs (Dkts. 72, 73).

In reviewing an R&R, a district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  A district court must conduct a *de novo* review of those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court carefully reviewed the R&R and the record.  Based on that review, the Court accepts in part and rejects in part Judge Foschio's recommendation. Mael's Section 1983 and assault claims against Richard solely regarding the alleged dragging may proceed to trial.  All remaining claims are dismissed.

## ANALYSIS

The Court assumes the parties' familiarity with the relevant factual background of this case.  *See* Dkt. 52, at 4-8.

## I.   Mael's Section 1983 Claim

### A.   Standards

Section 1983 allows a plaintiff to seek relief if a person acting under color of state law deprived her of rights, privileges, or immunities secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *see also Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

To be liable, a defendant must have "exercised power possessed by virtue of state law," *Emanuele v. Town of Greenville*, 143 F. Supp. 2d 325, 331 (S.D.N.Y. 2001), and had personal involvement in the alleged constitutional deprivation, *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994), *abrogated on other grounds, Sandin v. Conner*, 515 U.S. 472 (1994).  Because personal involvement is required, supervisory liability exists under Section 1983 only if the supervisor:

> (1) directly participated in the constitutional violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the violation; or (5) failed to act on information indicating that unconstitutional acts were occurring.

*Thomas v. Ashcroft*, 470 F.3d 491, 497 (2d Cir. 2006).

As relevant here, the Fourth Amendment guarantees the right "to be secure . . . against unreasonable . . . seizures."  U.S. Const. amend. IV.  It "provides an explicit textual source of constitutional protection against . . . physically intrusive governmental conduct" under which "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest,

investigatory stop, or other 'seizure' of a free citizen should be analyzed." *Graham v. Connor*, 490 U.S. 386, 395 (1989), *overruled on other grounds*, *Saucier v. Katz*, 533 U.S. 194 (2001). Courts analyzing Fourth Amendment excessive force claims employ a "reasonableness" standard. *Id.*

The reasonableness standard considers a variety of factors. Courts often contemplate the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Id.* at 396. Excessive force cases also require "a careful balancing of 'the nature and quality of the intrusion of the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Additionally, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

When confronted with these types of cases, courts also must resolve questions of qualified immunity, which "shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To constitute a clearly established right, courts look at prior precedent to determine whether is "it is 'sufficiently clear that every reasonable official would have

5

understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

### B.      Defendant Howard and Official Capacities Claims

Judge Foschio recommended granting summary judgment to the extent Mael alleges Section 1983 claims against Defendants in their official capacities and against Defendant Howard in his individual capacity. Dkt. 52, at 18-20. Mael did not object to Judge Foschio's recommendations. Dkt. 53. Upon review of Judge Foschio's analysis and the relevant record, the Court agrees with the recommendations and dismisses Mael's Section 1983 claim to the extent it was brought against Defendants in their official capacities and against Defendant Howard in his individual capacity. *See Am. Ins. Co. v. City of Jamestown*, 914 F. Supp. 2d 377, 384 (W.D.N.Y. 2012) (in reviewing a report and recommendation, "[t]he Court reviews unobjected-to findings for clear error.").

### C.      Defendant Richard

The Court next turns to the remaining portion of Mael's Section 1983 claim against Richard in his individual capacity.

Preliminarily, much of the R&R and the parties' papers discuss whether and when an arrest was made. *See* Dkt. 30-2, at 1 (stating in Defendants' statement of facts that the lawsuit "involves plaintiff's arrest in the early morning hours of December 25, 2012"); Dkt. 39, at 1 (stating in Mael's opposing statement of facts that this lawsuit "is **not** premised upon any arrest of Plaintiff"); Dkt. 52, at 16-17, 20-22. Judge Foschio concluded that this was an issue of fact that, in turn, affected

6

which Constitutional amendment is at issue and which standard to apply in

assessing whether Mael was subjected to excessive force. Dkt. 52, at 16-17, 20-22.

But this is issue does not require a jury's resolution. Regardless of when and

whether[2] Mael was arrested, the operative standard is the Fourth Amendment's

reasonableness standard.

In *Graham v. Connor*, 490 U.S. 386, 394 (1989), the Court specifically noted

that, where "the excessive force claim arises in the context of an arrest or

investigatory stop of a free citizen, it is most properly characterized as one invoking

the protections of the Fourth Amendment." There, the plaintiff sought damages for

injuries sustained "during the course of an investigatory stop." *Id.* at 388.

Nevertheless, the Court made "explicit" that "*all* claims that law enforcement

officers have used excessive force—deadly or not—in the course of an arrest,

investigatory stop, or other 'seizure' of a free citizen should be analyzed under the

---

[2] Mael seemingly argues that Richard never sought to arrest her and that she was
never arrested because she was issued an appearance ticket rather than brought
before a judge for arraignment. *See* Dkt. 58, at 7-9. But Mael's conviction for
resisting arrest (Dkt. 30-5, at 2) is dispositive. Dkt. 30-7, at 209-10 (instructing the
jury at Mael's criminal trial that, in order to find her guilty of resisting arrest, it
needed to find that she intentionally prevented or attempted to prevent a police
officer from affecting an authorized arrest). Mael clearly was arrested.

Even if Mael's arrest were unlawful, an excessive force claim is reviewed with the
same standard as a lawful arrest. *See McKnight v. Vasile*, No. 11-cv-6328P, 2017
WL 1176051, at *24 (W.D.N.Y. Mar. 30, 2017) ("[T]he Second Circuit has made clear
that even if an arrest is unlawful, there is no *per se* rule that any force employed for
that arrest is also unlawful. Rather, the reasonableness test established in *Graham*
remains the applicable test for determining when excessive force has been used,
including in those cases where officers allegedly lack probable cause to arrest."
(internal quotation marks and citation omitted)).

Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395.

Richard initially approached Mael's car as part of a wellness check (Dkt. 30-9, at 16), but once Richard had reasonable suspicion that Mael had been driving while impaired and she was no longer free to leave, the interaction became one governed by the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."); *United States v. Veloz-Lopez*, 574 F. App'x 43, at *44 (2d Cir. Sept. 12, 2014) (noting that one factor that a stop has occurred includes the "'use of language or tone of voice indicating that compliance with the officer's request might be compelled'" (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Therefore, the Court employs the reasonableness standard in assessing Mael's excessive force claim.

### 1.   Extraction, "Body Slam," and Handcuffing

The Court first analyzes Mael's claim that Richard forcefully and violently extracted her out of her vehicle and "body slammed" her onto the pavement. Dkt. 1-12 ¶ 18. While on the pavement, Mael asserts that Richard pulled her shoulders and arms while handcuffing her. Dkt. 30-3, at 31, 59.

At the outset, Mael questions what authority Richard had to remove her from the vehicle by force. Dkt. 58, at 10. Richard had reasonable suspicion that Mael had been driving while impaired or under the influence at that point. Dkt. 30-6, at

8

57-60 (describing the strong odor of alcoholic beverage and vomit, Mael's glassy eyes, her apparent impairment in motor coordination, and her statement that she was "drinking for the sick"). Richard therefore sought to investigate further by asking Mael to exit the vehicle to perform field sobriety tests. *Id.* at 59-60. But instead of exiting the vehicle,[3] Mael verbally refused and rolled up her car window. Dkt. 30-3, at 27. Because Richard was concerned that Mael could lock the car door and further obstruct his investigation, he opened the door (Dkt. 30-6, at 61), which Mael quickly tried to close (Dkt. 41 ¶ 12). In response, Richard took hold of Mael to extract her from the vehicle. Dkt. 41 ¶ 13.

This initial physical contact was permissible. *See Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) ("[B]ecause she would not leave the car on her own, Backaus determined that he would have to remove her forcibly. He wrapped his arm around her neck, shoulder, and arm, and pulled her from the car. The intrusion on Mrs. Lennon's Fourth Amendment rights, if any, was extremely limited."); *Othman v. City of N.Y.*, No. 13-cv-4771, 2018 WL 1701930, at *6 (E.D.N.Y. Mar. 31, 2018) ("When a suspect evinces unwillingness to exit his vehicle after being requested to do so by a police officer, the officer may have cause to forcibly remove the suspect

---

[3] Though Mael argues that she had the right to refuse field sobriety tests (Dkt. 58, at 2), "once a motor vehicle has been lawfully detained . . . ., the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (internal quotation marks and citation omitted); *Lennon v. Miller*, 66 F.3d 416, 424-25 (2d Cir. 1995) (granting summary judgment on false arrest claim because it was reasonable for officers to believe they had the authority to order plaintiff out a car they thought was stolen and then subsequently arrest her for obstruction when she refused to exit the vehicle).

from his vehicle."); *Brayshaw v. City of Burlington*, No. 5:13-cv-253, 2015 WL 1523019, at *10 (D. Vt. Apr. 3, 2015) (concluding that because plaintiff refused to comply with the officer's request that he move out of a line, the officer's decision to take hold of the plaintiff's left arm was a minor escalation that was "objectively reasonable in light of clear evidence that a mere verbal request would not suffice"); *see also Graham*, 490 U.S. at 396 ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

It becomes a closer call when analyzing the degree of force Richard used to bring Mael to the ground and handcuff her. According to Mael, she sustained various injuries, including a laceration to her left eyebrow that required three stitches (Dkt. 30-3, at 33), bruising and swelling to her face (*id.* at 33-34), concussive symptoms such as nausea for three weeks after the incident (*id.* at 34-35), "a C-2, C-3 disc protruding" in her neck (*id.* at 35), and a right rotator cuff injury that was pending surgery at the time of the 50-h deposition that occurred eight months after the incident (*id.* at 39-40). During her deposition, she noted that her neck and rotator cuff injuries continued to cause her pain. *Id.* at 40-41.

Mael was suspected of driving while intoxicated, which poses significant risk to herself and others and carries with it a possible sanction of a year of imprisonment. N.Y. Veh. & Traf. Law § 1193(b). *But see Romanac v. Town of Cheektowaga*, No. 17-cv-334S, 2021 WL 409859, at *14 (W.D.N.Y. Feb. 5, 2021) (concluding that driving an unregistered vehicle and while intoxicated are not the

types of offenses that warrant any use of force, though citing cases in which the suspect was not resisting).  Additionally, Mael admits that she further resisted and obstructed Richard's attempt to remove her from the vehicle by clinging onto the steering wheel.[4]  Dkt. 30-3, at 28.  Her conduct was more than mere passive resistance and increased the degree of force Richard was permitted to use.  *Compare Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000) ("The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force.") *with Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 124 (2d Cir. 2004) (vacating an award of summary judgment in favor of defendants because plaintiffs were passively resisting officers).

Less forceful means may have been available to Richard, but an officer is not held to such a standard—in part because of the rapidly evolving nature of many police interactions.  *McKnight v. Vasile*, No. 11-cv-6328P, 2017 WL 1176051, at *26 (W.D.N.Y. Mar. 30, 2017) ("Certainly, the ideal encounter between law enforcement officers and civilians is one that involves the least invasive measures possible to

---

[4] A jury also found Mael guilty of resisting arrest and obstructing governmental administration. Dkt. 30-5, at 2. But the jury could have found that Mael was resisting arrest at later points in her interaction with Richard, so this is not conclusive as to whether she was resisting immediately prior to Richard's decision to force her to the ground. *See* Dkt. 30-6, at 72-73 (testifying that Mael did not cooperate with Richard in walking to his vehicle and that she kicked him while sitting in the patrol vehicle).  Nevertheless, Mael admitted that she clung onto the steering wheel while Richard attempted to remove her, constituting active resistance. *See Mattos v. Agarano*, 661 F.3d 433, 445 (9th Cir. 2011) ("Brooks refused to get out of her car when requested to do so and later stiffened her body and clutched her steering wheel to frustrate the officers' efforts to remove her from her car.  In other words, she resisted arrest.").

obtain compliance from arrestees.  But the Fourth Amendment does not mandate

that an officer's actions conform to a standard of perfection or even best possible

police practices; rather, it requires nothing more or less than reasonableness.").

Even if the force with which Richard took Mael to the ground and applied

handcuffs was excessive, qualified immunity shields Richard from suit and liability.

Qualified immunity "protects all but the plainly incompetent or those who

knowingly violate the law." *City of Tahlequah*, 142 S. Ct. at 11 (internal quotation

marks and citation omitted).  "Precedent involving similar facts can help move a

case beyond the otherwise hazy borders between excessive and acceptable force and

thereby provide an officer notice that a specific use of force is unlawful." *Rivas-*

*Villegas*, 142 S. Ct. at 9 (internal quotation marks and citation omitted).  Prior

caselaw need not be "'directly on point for a right to be clearly established, [but]

existing precedent must have placed the statutory or constitutional question beyond

debate.'" *Id.* at 7-8 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).  In resolving

these questions, courts cannot operate "at too high a level of generality" and must

define clearly established rights at a level of specificity so that "it is clear to a

reasonable officer that his conduct was unlawful in the situation he confronted."

*City of Tahlequah*, 142 S. Ct. at 11 (internal quotation marks and citation omitted).

No decision is sufficiently similar to the facts of this case to have provided

Richard with notice that his actions violated Mael's rights.  In many cases in which

the courts conclude that qualified immunity does not apply, plaintiffs allege

gratuitous force when the plaintiffs no longer are a threat or show resistance.  *See*

*Lennox v. Miller*, 968 F.3d 150, 157 (2d Cir. 2020) ("Because a reasonable jury could find that the force used by Officer Clarke was significant and that Lennox was not resisting when such force was used, we cannot say, as a matter of law, that Officer Clarke did not violate clearly established law."); *Adedeji v. Hoder*, 935 F. Supp. 2d 557, 569 (E.D.N.Y. 2013) (upholding jury's conclusion that it was unreasonable for officer to "nudge" plaintiff down a flight of stairs when plaintiff did not resist being arrested and was generally compliant once handcuffed); *Davis v. Murphy*, No. 12 Civ. 3297, 2018 WL 10070524, at *8-9 (S.D.N.Y. Sept. 24, 2018) (denying qualified immunity where, after plaintiff was brought to the ground and seated, he was kicked "with such force that Plaintiff's head bounced back"); *Batista v. City of N.Y.*, 2020 WL 1659785, at *9 (S.D.N.Y. Apr. 3, 2020) (denying summary judgment on the issue of qualified immunity where prior to deploying a taser, the officer allegedly "was aware that Plaintiff was being restrained by multiple officers, had both hands behind his back, had been punched in the head, and was attempting to shield his head from further blows").

Here, Richard used a single-arm take-down maneuver to control Mael and pulled her arms behind her back to handcuff her. He did so only after Mael refused Richard's verbal demands to exit the vehicle, rolled up the car window, tried to close the car door, and clung onto the steering wheel while Richard attempted to extract her from the vehicle. Mael alleges significant injuries, but qualified immunity simply asks whether any reasonable officer would believe use of this maneuver, in this context, was constitutional. *Brown v. City of N.Y.*, 862 F.3d 182, 192 (2d Cir.

2017) ("Again, that inquiry is whether every reasonable police officer would view the force used by [the officers], in the circumstances in which that force was applied, as excessive according to clearly established law."); *Hedgpeth v. Rahim*, 213 F. Supp. 3d 211, 228 (D.D.C. 2016) ("What matters is what the officer did—a simple takedown maneuver—not what necessarily resulted—a bloody head injury."), *aff'd*, 893 F.3d 802 (2018). Here, a reasonable officer could conclude that the single-arm take-down maneuver and forcing of Mael's arms behind her back were reasonable under the circumstances. Therefore, Richard is entitled to qualified immunity as to the extraction, handcuffing, and alleged body slam.

## 2.    Post-Handcuffing Dragging

Mael also alleges that Richard used excessive force by dragging her by her neck across the parking lot to an ambulance, with her face close to the ground, while handcuffed (Dkt. 30-33, at 31-32)—allegations Richard denies (Dkt. 30-9, at 89-90).

As a preliminary issue, Defendants argue that Mael's claim is "contradictory not only to other testimony she has provided, but to unassailable facts elsewhere in the record." Dkt. 72, at 5. Citing *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), Defendants argue that the Court may grant them summary judgment despite Mael's sworn statements because her testimony is "'unsubstantiated by any other direct evidence [and] so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'" Dkt. 72, at 1 (quoting *Jeffreys*, 426 F.3d at 555). This is a close call.

As to this portion of Mael and Richard's interaction, the core factual dispute is whether Mael was dragged to the ambulance while handcuffed (Dkt. 30-33, at 31-32), or whether Richard lifted Mael to her feet and walked her to his police car before driving her to the ambulance (Dkt. 30-9, at 88-89).  In any event, while Mael has been inconsistent about where she was dragged to,[5] her version is not "so contradictory or rife with inconsistencies" that is "facially implausible." *Randolph v. Griffin*, No. 19-434-pr, 816 F. App'x 520, 523 (2d Cir. June 2, 2020) (quoting *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010)).

This case differs from *Jeffreys*, where the plaintiff's statements—that he was pushed out of a window by officers or that he jumped out of the window, *Jeffreys*, 426 F.3d at 552—were blatantly contradictory and went to the heart of the defendants' liability. *Id.* at 550-52 (noting that plaintiff sought relief because officers allegedly assaulted him and threw him out a third-story window, but he could not provide any details about those who beat him and he first mentioned being thrown out of the window nine months after it allegedly occurred); *Bentley v. Autozoners, LLC*, 935 F.3d 76, 86 (2d Cir. 2019) (describing inconsistencies that go

---

[5] In her verified amended complaint, Mael alleges that Richard "dragg[ed] her across the pavement to Defendant's patrol vehicle." Dkt. 1-12 ¶ 45. But when answering questions about the alleged dragging during her deposition, Mael stated: "He held the nape of my neck.  I was face down.  This was to the ambulance." Dkt. 30-3, at 31-32. Likewise, during her underlying criminal trial, Mael asserted that she was "dragged across the parking lot to the ambulance, face down." Dkt. 30-7, at 86; *see also id.* at 103 ("I never saw the police vehicle.  But my particular vehicle— there was never a police vehicle involved in this incident for me."); *id.* at 105 (answering affirmatively to whether she was dragged 70-80 feet directly to the ambulance).

the crux of liability); *Rivera v. Rochester Genesee Regional Trans. Auth.*, 743 F.3d 11, 22-23 (2d Cir. 2014) (noting that the variances in plaintiff's assertions go to the number of times he was subjected to ethnic slurs but not in claiming that he had been subjected to them).  Here, neither version of Mael's account—that Richard dragged her to the ambulance or his patrol car (*see supra* note 5)—undermines her core claim: that she was dragged.  Her claim is not implausible under account; under either account, Richard may be liable.

Furthermore, Mael states that a tear in the left knee of the pants she wore that night corroborates her allegation that she was dragged.  Dkt. 73, at 3.  While Defendants argue that this could have been caused by the original "scuffle," (Dkt. 72, at 5) the Court cannot engage in "reconciling the parties' competing versions of the incident."  *Shepherd v. Mayer*, No. 13-cv-6142, 2018 WL 679456, at *3 (E.D.N.Y. Jan. 31, 2018) (concluding that plaintiff's version of events was not so disconnected from other evidence that no rational jury would credit it).

Similarly, although there is more evidence in the record consistent with Richard's version of events, "the court cannot take a side at the summary judgment stage.  By weighing the conflicting evidence, the [Court would be] improperly engag[ing] in fact finding in violation of well-settled summary judgment standards."  *Randolph*, 816 F. App'x at *524 (internal quotation marks, alterations, and citation omitted); *Shepherd*, 2018 WL 679456 at *3 (noting that whether discrepancies in plaintiff's evidence amount to contradictions that adversely affect his credibility is a matter for the jury).

Defendants next argue an absence of excessive force as a matter of law. Mael alleges that, after she was handcuffed, Richard dragged her with her face close to the ground, by the scruff of her neck. Dkt. 30-33, at 31-32. At this stage, Mael no longer posed an immediate threat of harm to herself or others—she was outside the vehicle, on the ground, in handcuffs, and Richard could control her movements. And, viewing the facts in the light most favorable to Mael, she was no longer resisting.[6] Dkt. 30-3, at 31. Certainly, a jury could find a dragging to be excessive, particularly under the facts described.

Richard disputes Mael's allegations. Dkt. 30-9, at 89-90. Thus, a material issue of fact exists as to whether Richard employed excessive force after handcuffing Mael, which prevents summary judgment. *Johnson v. City of Syracuse*, No. 5:16-cv-00622, 2018 WL 9989657, at *4 (N.D.N.Y. Apr. 11, 2018) (concluding that summary judgment was not appropriate based on allegations that the officer dragged plaintiff and an argument that plaintiff resisted other officers); *Nicholas v. City of Binghamton*, No. 10-cv-1565, 2012 WL 3261409, at *10 (N.D.N.Y. Aug. 8, 2012) ("[I]ssues of fact remain whether Officer Harder employed excessive force when removing Plaintiff from the NYSEG vehicle and dragging her across her front yard."); *Kerman v. City of N.Y.*, 261 F.3d 229, 239-40 (2d Cir. 2001) (finding summary judgment inappropriate in case where officers allegedly dragged

---

[6] Richard alleges that once he stood Mael up, he began walking her to the patrol car. Dkt. 30-9, at 88-89. When asked if she was then compliant, Richard says that she was pushing back against him and digging her heels in, but she was still walking. Dkt. 30-9, at 89.

unresisting plaintiff up a staircase on his stomach, among other things). *But see Dzwonczyk v. Syracuse City Police Dep't*, 710 F. Supp. 2d 248, 263 (N.D.N.Y. 2008) (noting that the plaintiff "did not sustain any serious injuries," even though he stated that he was "literally dragged," and concluding that the plaintiff failed to state a claim).

Moreover, qualified immunity does not apply to the alleged dragging. On the date in question, it was "well established" that "entirely gratuitous force is unreasonable and therefore excessive." *See Lennox*, 968 F.3d at 157 (quoting *Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010). It does not apply, for example, to significant force used against a restrained arrestee who does not actively resist. *Lemmo v. McKoy*, No. 08-cv4264, 2011 WL 843974, at *6 (E.D.N.Y. Mar. 8, 2011) ("[G]ratuitous uses of force that are not required to subdue an individual likely fail the *Graham* objective reasonableness test."); *Hamilton v. City of N.Y.*, Nos. CV-07-3633; CV-07-3825, 2009 WL 2226105, at *6 (E.D.N.Y. July 23, 2009) (noting that "a reasonable police officer would have known that purposely tripping a handcuffed suspect, who was not resisting arrest or provoking the officer, constitutes the use of excessive force"); *McClendon v. County of Nassau*, No. 11-cv-0190, 2012 WL 4849144, at *9 (E.D.N.Y. Oct. 11, 2012) ("Unnecessary blows inflicted while an arrestee is in handcuffs may be sufficient to sustain an excessive force claim."); *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 343 (2006) ("[A] reasonable officer should have known that repeatedly striking a subdued suspect violates a clearly established constitutional right not to be subjected to excessive force during

arrest."); *Bradley v. Rell*, 703 F. Supp. 2d 109, 121 (N.D.N.Y. 2010) (finding that "a reasonable officer would have known that continuing to assault a handcuffed and subdued arrestee" violated his right to be free from excessive force).

This is true "despite differences in the precise method by which that force was conveyed." *Lennox*, 968 F.3d at 157; *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (noting that a case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate"). The Court denies Richard's motion as to Mael's allegations that she was dragged.

In sum, the Court grants Richard summary judgment on Mael's Section 1983 claim as related to Richard's use of force to extract Mael from her vehicle, bring her to the ground, and handcuff her. But the Court denies summary judgment as to Mael's claim that Richard dragged her across the pavement.[7]

## II.   Negligence

Mael alleges that both Defendants were negligent—specifically, that:

> [W]hile the Plaintiff BOBBIE L. MAEL was being wrongfully detained upon charges which were improperly laid against her, without probable cause, the said Plaintiff injured her face, head, shoulders, arms, knees and legs against the pavement . . . . That the aforementioned incident, and the injuries resulting therefrom sustained by the Plaintiff BOBBIE L. MAEL, were caused wholly and solely by the negligence of the Defendant LEE RICHARD, while

---

[7] "[T]he essential elements of excessive force and state law assault and battery claims are substantially identical." *Warr v. Liberatore*, 270 F. Supp. 3d 637, 653 (W.D.N.Y. 2017) (internal quotation marks and citation omitted); *see also Rizk v. City of N.Y.*, 462 F. Supp. 3d 203, 228 (E.D.N.Y. 2020). For the same reasons described above, Mael's assault claim survives as to the alleged dragging, but is dismissed as to the initial extraction, handcuffing, and body slam.

acting in the course of his employment as an Erie County Sheriff's Deputy and within the scope of his employment with the Erie County Sheriff's Department.

Dkt. 1-12 ¶¶ 27-28. She also alleges that "Defendant LEE RICHARD was careless and negligent, in that, he failed to properly secure and safeguard the Plaintiff BOBBIE L. MAEL while in his custody, and further, was negligent in transporting the said [Plaintiff] to the Erie County Medical Center, thereby exposing her to the risk of injury by striking her head, face, shoulders, arms, abdomen, knees, and legs against the pavement." *Id.* ¶ 29.

The Court agrees with Defendants that, to the extent Mael's negligence claim relates to being "wrongfully detained" (Dkt. 1-2, at 7-8), New York does not recognize a negligence claim based on an officer's alleged failure to exercise the appropriate degree of care in effecting an arrest.[8] *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *Boose v. City of Rochester*, 421 N.Y.S.2d 740, 744 (4th Dep't 1979). Consequently, the Court grants summary judgment on Mael's negligence cause of action.

### III.   Failure to Train

Mael also alleges that Howard failed to train Richard and should have known that Richard was "given to emotional outbursts and acts of physical violence." Dkt. 1-12 ¶¶ 36-37. Judge Foschio recommended granting summary judgment as to this

---

[8] Additionally, Mael cites to no facts supporting her allegation that Richard was negligent in transporting her to ECMC. *See also* Dkt. 58, at 8 ("That, there is no doubt that the Plaintiff required medical care after being face planted by the Deputy, nor is there any issue that the Twin City Ambulance transported her to E.C.M.C. for emergency care.").

claim. Dkt. 52, at 33.  Mael did not object.  Dkt. 53.  Upon review, the Court agrees

with Judge Foschio's analysis and grants summary judgment to Howard as to

Mael's fourth cause of action.

## IV.    Punitive Damages

Finally, Judge Foschio recommended granting Defendants' motion for

summary judgment with respect to Mael's request for punitive damages to the

extent sought against Defendants in their official capacities, and denying

Defendants' motion to the extent Mael seeks punitive damages against Defendants

in their individual capacities.  Dkt. 52, at 34.  Neither party objected to this

recommendation.  *See* Dkt. 53; Dkt. 54.  Upon review, the Court agrees with and

accepts the recommendation.

## CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in

part Defendants' motion for summary judgment (Dkt. 30).  Specifically, Mael's

Section 1983 and assault claims against Richard regarding the alleged dragging

may proceed to trial.  The remaining claims are dismissed.


SO ORDERED.


Dated:        January 27, 2022
              Buffalo, New York



              JOHN L. SINATRA, JR.
              UNITED STATES DISTRICT JUDGE